to bring up any new arguments in rebuttal that have not previously been addressed either by you or your opponent. With that, I call the first case of the day, and that is Richard Van Houten v. City of Fort Worth. Good morning, Your Honors. May it please the Court. Robert Klausner and David Rapp, representing police officers Van Houten and Hall. Any briefed issue that we do not get to today, in terms of discussion, we would rely on the brief. The primary issue before you today is the review of the lower court decision which interpreted a previously uninterpreted provision of the Texas Constitution, Article 16, Section 66, which was adopted in 2003. The issue is, does the term benefits accrued refer to something that locks in on the day that you vest in the plan, as that term is defined within the plan document itself? In the case of Fort Worth, five years of service, and whether that formula that determines how this defined benefit is later paid when one retires, does that apply to future service or only to service earned up to the date of the ordinance change, which is at issue here? What is your best authority for interpreting or defining the word accrued to your advantage? The best authority that we have is really the only authority that we have, and that's the Attorney General opinion, GAO 615, which was drafted by then Attorney General, now in the plan. Within that Attorney General's opinion, the AG looked at a number of state constitutions in our sister jurisdictions to Texas that had either identical or similar language. Alaska and Hawaii both used the term accrued benefits or benefits accrued within their constitutions, and they both have substantial jurisprudence that defines the term as the appellants have defined it here. That is, when one gets to whatever vesting is defined at, and it's entirely within the control of the plan sponsor, the employer, to decide what the term vested means. Fort Worth could have had one year, five years, 20 years. They chose five. But once that constitutional provision passed, and you cross that finish line, that point of demarcation, all aspects of the plan will apply not only to the service that you accrued, but to the service that you have after. Now, is the city free to change the plan for new hires? Yes, it is. Is it free to change the plan for non-vested employees? Yes, it is. Is it free? But the idea is that you have a defined benefit. The whole nature of the plan is the benefit is defined at the beginning once, and so that's not necessarily an unfriendly question. So, because it's defined in the explanation, you have to stick with that methodology throughout, regardless of whether the actual benefits themselves, the monetary benefits have accrued. It's the system that is the defined benefit that is accrued. You are correct, Your Honor. To get back to Judge Jolly's question, really the two best cases, and the Attorney General cited them both, one is a case out of Massachusetts that says when one speaks of benefits in a defined state or local government plan, one refers to, quote, the whole complex of provisions. And that was picked up by the Alaska Supreme Court in Hammond v. Hochbeck. But there's a better example of a case where it worked, and the Attorney General discussed a case called Flysock v. Alaska Division of Retirement. And what happened is, Flysock goes to work as a school employee, and at the time he went to work, they had a rule that said when you leave, if you have unused sick time or you have unused vacation time, you can cash that out and add it to your final year's salary, because a defined benefit plan is a percentage of your salary. So if you have the chance to bump that up in that last year, obviously you'll get a bigger pension. While Flysock was employed, Alaska changed the rules, and they said, you can't stick accumulated leave into your final year's salary anymore. But the Alaska Supreme Court said because that was the rule when Flysock vested in their plan, now in Alaska you vest on day one, but it said because that was the formula when he went to work, that was the reasonable expectation of the parties. And that's really what you look at in an impairment case. So I think that is our best authority. You look to the reasonable expectations of the parties as to the definition of accrued? Is that what you're saying? Yes, Your Honor. The reasonable expectation of the parties after the adoption of the Constitution was that it was intended specifically to provide that this formula locks in on the date of vesting. And within Texas, there are plans that vest at varying time periods. Some are five, some are 10. There may be some that I'm unaware of that are longer. I am aware of plans in other jurisdictions that are longer. Well, I mean, if the state of Texas had intended for accrued to mean at the time that you retire, as opposed to the time that the plan itself vests, what term would they have used? They would have used the term that was originally in the early draft of House Joint Resolution 54, which was the legislative act that got to the electors in 2003. In fact, the city cites to some legislative history involving one of the earlier drafts. And the earlier draft said, this is only intended to apply to service earned to date. And it also used the term accrued financial benefits, meaning? In other words, you say they would have defined accrued, but you are not telling me any other word that they would have used other than accrued. They could have used accrued financial benefits. And there's an excellent discussion within the Attorney General's opinion of the distinction between constitutions that use the term accrued financial benefits or accrued monetary benefits, and those that use the term accrued benefits. Michigan, for example, has a specific provision that speaks to accrued financial benefits. And within their constitutional convention's discussion, Commissioner Van Dusen, during that, I believe it was 1970, said we... How would that have changed your argument, though? I'm sorry? How would that have changed your argument if they had even defined the term in the way that you are arguing now, accrued financial benefits? Your argument would be the same you're making now. It would have depended on the language that was used. The constitution... No, no, I'm just... The language that's used, we're talking about the language that's used, financial benefit, and that's what you're arguing now. But the term financial benefits was taken out of the draft. And when they used... It doesn't make any difference. It does make a difference, respectfully, Your Honor. And here's the difference, if I may explain. If I said accrued financial benefits, that would equate a benefit with a dollar or, you know, an accumulation of dollars. But to use the term accrued benefits, unfortunately without any better explanation from anybody, the term accrued benefits has been interpreted by other jurisdictions to mean the whole complex of provisions. And, in fact, even the city admits in its brief that the term accrued benefits includes not only money, but the formula. Where we have differed in this case, and where I believe Judge Means got it wrong, is he assumed that the legislature, and ultimately the electors of Texas, meant that this was just to have no forward-looking application. There was language in the original constitutional provision before it was made its way all the way through the legislature that said, this is only for benefits accrued up to this point, up to whenever you make a change. That language was excised. And the Texas statutory interpretation language is very clear that when a provision is in an act, and then you take it out of the act, the legislature meant to reject that language. But even if you, this court, think that the provision is ambiguous, we'd of course ask you, in the absence of any other jurisprudence, if you feel you cannot give deference to the provision, then guess what the courts of Texas might say. You have the ability to certify the question. We recommended language to questions. We're not suggesting that that's the only questions that the court could send. Well, now normally, I think that it's best to certify very complicated issues, to let the courts decide for themselves what their law is, and we have had a number of cases we've certified. But in this case, isn't it like getting a second bite of the apple, the fact that the certification is sought so late in the day? Is it appropriate to certify once you get all these rulings that you don't like, where you haven't asked for certification all along? Under the Texas Constitution, unlike the 36 other states that allow for, no, 46 other states that allow for certification, a Texas trial court, a U.S. district court in Texas, cannot certify a question. It can only an appellate court, either this court or the United States Supreme Court, can certify a question, so it could have been asked no earlier than where we are right now. But we think that what is appropriate is under this court's decision in Neyland, which says that in the absence of a decision from either the high court of the state or at least an intermediate appellate court of a state, we're going to give a lot of attention to what the chief legal officer of the state says, and that's the attorney general. We don't think you have to certify the question. We think our interpretation, respectfully, is the correct interpretation, and the judge means got it wrong. But even if we lose on section 66, that still doesn't get to the fact that this was a federal impairment case. Section 66 decision in our favor would effectively moot the rest of the case, and it would have the case would be decided strictly as a matter of state law. But if we lose as a matter of state law, but we still didn't get to the question of whether the contract was impaired, and I think this court's decision in UnitedHealth, which involved the health care here in Louisiana contract between the state and UnitedHealth, which was cited below, is a good example, and that's where I got the phrase, the reasonable expectations of the parties. Because impairment is a federal question. While the contours of the contract may be decided by the law of the state, it is a federal question to be decided by a federal court. And even if 66 wasn't there. What is the reasonable expectation of the parties when, and who are the parties you're talking about? The reasonable expectation of the parties to this contract are the police officers of Fort Worth who came to work with the representation that their pension would be X, and now it's less than X. Do we have any evidence of that, of the intentions of the parties? We were prevented from discovery, but there is evidence in the record that shows that for many years, the multiplier in the plan was 3%. For many years, the multiplier in the plan, or the salary calculation was your highest three years, now it's your highest five. Which means the benefit went down by about 20, 25% looking forward. And when one vests in the plan, the language of the plan, the plan documents which were made part of the record, the explanatory materials from the board of trustees that runs the pension system, all said when you vest, you could leave. I could work in Fort Worth for five years, under the old pro, and it's still five years. I could work for five years and go to law school, go be a firefighter, go work in another city, and all I have to do is show up when I reach a certain age, and my pension can't be changed. But for the officer that stayed, after five years, the reward for staying in the line of fire, and the reward for continuing to serve the citizens of Fort Worth, is we're going to get you before. And despite the fact... I'm sorry to say, and the city can never amend its pension plan, once it's established its plan, it cannot be amended thereafter, irrespective of the public's interest. That's what an impairment case is about. The question is whether or not the impairment is reasonable and necessary to preserve the public welfare. No. Can the city amend the plan? Yes. Can it amend the plan in a way that impairs the contract of its participants? No. And even the Texas jurisprudence that preceded the Constitution, the Trammell case from 1937, and even Byrd from 1928, says pension is a contract subject to impairment only by the reserve power of the legislature. What you are conceding, I think you did at the outset of your argument, is that you're not making this argument for any future employees, only the current employees, is that what you're saying? Yes. And that's not a concession. That has been our position from day one. Well, I don't mean a concession. I mean from the General Constitution. Yes, Your Honor. The city is always free to say, that person hired tomorrow will work under a different regime. The city is always free to say, that person who's not yet vested, you haven't crossed this point of demarcation, that what you agreed to work to, at least, to earn this right, that we can change that. You said vested means the same thing as accrued. Vested means you have worked a certain number of years, and in return for which the plan has granted you an expectation of a benefit, not only for what you did in the past, but for what you will work for in the future. You don't get pension benefits if you don't keep working. The deal under which you agreed to work simply cannot be changed. Back to this certification. You definitely avoided what I think is the main impediment, is that you sought the federal jurisdiction so assertively. It's not whether or not you could have earlier put in your brief in the district court. It's that you chose to be in federal court, and you, in fact, really asserted to be there. I'm sorry, Your Honor, that I did not understand your question, but I can answer that. We asserted a federal case because this is an impairment case, and with or without the Constitution, the city impaired the contract of its workers under both the pre-2003 and the post-2003 standard that applied. We never got to the federal case, because in response to a motion to dismiss, the trial court said, well, we're just going to decide this on the question of the state law. And when the judge ruled against us on the state law, he should not have dismissed the rest of the case. Okay, Mr. Klassner, we have your argument, and you have some time later on in the next case. We'll hear from Ms. Auld now. Thank you, Judge Shiley. Good morning, and may it please the court. My name is Mary Ann Auld, and along with D. Kelly, Jr., I represent the city of Fort Worth in both the Van Houten and Tate appeals that are before the court this morning. Having listened to Mr. Klassner's opening argument, I'd like to take just a moment to express the deep gratitude that the city of Fort Worth has for the service that the appellants and their colleagues provide, both to the city and to its citizens. Certainly the city takes very seriously the relationship that it has with its public servants, the treatment of those public servants, whether they're police officers, firefighters, or other general city employees. Nobody's questioning that on appeal. You're not questioning that. That's true. It's not really an issue. It's a political issue, but not a legal issue. It is a political issue, and it is, yes, Your Honor, a legal issue, but part of this informs the reason that we are here today. Because the city has committed to providing defined benefits for its public servants, it has a responsibility to ensure that it protects the health of the funds that are going to be used to satisfy the commitments. I understand that as well, but what we're talking about is what does the term accrued mean in the Texas Constitution? Yes, sir. Then let me turn to that point. The law is clear that in construing the Texas Constitution, the court should rely heavily on the words that are actually used, the literal text and their plain language. Before we even look at the text of the Constitution, I think that it is helpful to discuss the context in which Section 66D was created, and that context is this. In 1937, as Mr. Klausner referenced, the Supreme Court decided the city of Dallas versus Trammell, a case in which the court held that a vested pensioner had no protected right to any sort of benefits upon retirement, regardless of when those benefits had accrued. In 2003, some 70 years after the Trammell case was decided, the Texas legislature proposed a constitutional amendment that would ensure that the accrued retirement benefits of a member of a pension fund, a member of some retirement fund, that those accrued benefits could not be reduced or impaired by subsequent unilateral legislative action. You have in your briefing in several different places the language of Section 66D, and according to the plain and unambiguous language that is used in that provision, we know that a city may not enact changes to a retirement system that reduces or otherwise impairs, that's the language used, benefits accrued, in other words, benefits that have been accumulated prior to the date of the change by vested members of the city's retirement system who are or will be eligible to receive those benefits. So you attach no significance to the fact that the word financial was considered and then not used? None. Why is that? As part of the legislative process, this language started out in the House. The House took the lead in coming up with the language originally that would be used with respect to this particular provision. There were several different versions that were floated, for lack of a better expression. They came up with language. There were words dropped out. Originally there had been an inclusion of saying that this was going to be a contractual right. That was taken out. Other words were added and subtracted. This is not a situation where a statute was being amended that was already in place, and as part of the amendment of a statute, words were taken out that specifically had been used before. This was the creation of constitutional language, and the House took the lead in coming up with what it was trying to do in putting this provision in place. All of the legislative history that the appellants rely upon with respect to the meaning of Section 66D relates to the version of 66D that the House created. Why is that relevant? It's relevant because that is not the version that actually was passed by the House and Senate and then went to the people of Texas for a vote, and that ultimately became Section 66D of the Texas Constitution. The fact that there was language in the legislative history, that there was information that was discussed doesn't really make a difference. All of the legislative history that the appellants rely upon has to do with the earlier version that did not become 66D. The Senate version, which is now 66D, the legislative history there absolutely supports the city's position on this particular ... Would the interpretation that you're advocating allow the resultant tremble? The interpretation that you're advocating, would it allow the very resultant tremble, which was the issue you do not believe it would? No. I do not. Why not? The reason is this. What Trammell decided, the Supreme Court in the Trammell opinion said that yes, by virtue of a contract of employment, an employee has the right to participate in a retirement system, but there is no right to particular benefits under that system. 66D was put in place to change that very thing, creating a right to receive benefits accrued for service already performed. That's the critical distinction. We are going to protect the benefits accrued. That's why that language is used in 66D, but we are also, going back to the legislative history that we were just discussing, going to allow for flexibility. I know this is cited in the brief, but I think it bears emphasizing here. There is language in the Senate's legislative history that tells us that this amendment would permit local public retirement systems to make changes in the provision of certain benefits as long as the changes apply prospectively. Thus, the amendment would also give those retirement systems the flexibility the system needs to adjust retirement benefits, if necessary, to respond to changing economic times, while still protecting the benefits that local government employees have already earned. We're not taking away anything that has been earned. In fact, that is why the bifurcated calculation that the city committee was working on. He says you're taking away something that has been promised, not earned, but at least promised and, therefore, accrued in that sense. There never has been, since the time of Trammell, an expectancy right to future benefits in the state of Texas. Where that promise comes from, I do not know. Trammell says you may have the right to participate in the system. You don't have the right to particular benefits. 66D was put in place for that, and that certainly does not promise them that they are going to be given benefits under the formula that is in place when they vest. In fact, that's why the detailed breakdown of D1 and D2 within that overall constitutional provision. This is not a case that can be resolved by looking to other jurisdictions. Why not? Alaska language is very similar. Well, the difference in all of the other states in Texas is this. Every single state constitution that they rely upon, and then the language of the cases that interpret those constitutional provisions goes back to the contractual relationship that is created constitutionally in every one of those states. Most of the constitutional provisions are referenced in the briefing, but in Alaska and Hawaii and Illinois and Michigan, they all speak in terms of a contractual relationship between the employee and the retirement system. That is when the rights vest in those states, if you become a member of the retirement system, you have all of the rights contractually that are in place at that time. That is not the language of the Texas Constitution. If you look at Alaska, for example, membership and employment retirement systems of the state or its political subdivisions shall constitute a contractual relationship. We have no contractual relationship in the state of Texas. What we have is a promise that accrued benefits will be given for past service up to the point of that change. Once there is a change, we can prospectively alter the benefits formula. The reason for that is to protect us from many of the bad situations that have resulted in other places. Just last week in the city of Chicago, they found out that they cannot do anything with respect to their pension plans because of the constitutional provision that makes pension protection a constitutional question. There is a contractual relationship in Illinois between those employees and the retirement systems. We do not have that language. All of the reference to Fly Sock in Alaska, the Jones case in Illinois, wherever it is, has absolutely no bearing. Have any states interpreted it this way? No other state that we're aware of have created a constitutional provision that addresses the issue in this way. We are trying to keep in Texas from happening what has happened to an unfortunate degree in some other states. Given the novelty of Texas's approach, as you state, that they have a novel approach, that they've tried to do this unique way, and given the fact that the Attorney General has weighed in on this unique way of doing it, and given the fact that it's so important, as you led off, to cities and their police officers, why shouldn't we let or ask, beg, the Texas Supreme Court to take this issue of Texas law on, rather than having us make an eerie guess, given the extreme importance and the novelty? There are a number of questions kind of within that, the way I'm listening to your questions, so I will . . . Within reason. You're not explaining. You didn't choose the court you went in. Right, but now that we are, we can do whatever we want, so why shouldn't we do that? Within reason. We can certify if they'll take it. Well, you can do that. We don't think that this is a case that needs to be certified. Why not? We don't think that it needs to be certified because of the . . . I don't think you can win in the federal court. That's why you don't want to be certified. Well, I would like to believe that we would win in any court that is looking at this in a reasoned way and analyzing the language of the Constitution the way that it has been written. So, we're not afraid of going to the Texas Supreme Court. Greg Evans analyzed it in what he thought was a reasoned way. Yes. A very knowledgeable constitutional lawyer. Well, I will say that we believe that in the Texas Supreme Court, we also would get to the right result. The reason that we do not believe that this case needs to be certified to the Texas Supreme Court, however, acknowledging that the court has not answered this question, is that the court has given us very clear rules about how we interpret statutes and constitutional provisions, giving effect to the plain language, looking at all of the words in their context, not taking . . . I think it's clearly better for Texas to decide issues like this itself than for three judges on a federal court to tell Texas what its Constitution means. I take your point in the abstract. With respect to this particular case, I respectfully disagree with you because I do think that you can easily get to the proper construction by using the well-established rules of construction that Texas has laid out, which is exactly what Judge Means and Judge McBride did. They independently came to the well-supported conclusion that the language means what we have said that it means. I think even the Attorney General's opinion that we've talked about supports that same conclusion. That is not authority that goes against us. Now, I can see Judge Elrod looking through her briefing and thinking that I must be nuts in saying that, but I will tell you . . . I certainly was not thinking you were nuts in any way, Counselor. Okay. But the AG opinion does not get the appellants where they want to go. The Attorney General in his 2008 opinion was addressing a very different situation than the one that is before us. Did they have a re-election that year? I don't think it had anything to do with any . . . You know, I'm not entirely sure. I should probably know that, but I don't. Probably relevant. Now, Judge Jolley has asked you a couple of questions that aren't relevant, but let me ask you one that's not relevant. When I looked at the Constitution before I read anybody's briefs, benefits accrued, well, that means to be when they come to retirement. Come to retirement. The city never has argued that, have you? No. No. Why? That's not what we believe. It's the benefits that you have accrued in your service without having . . . Why do you believe that instead of believing what I thought, benefits don't accrue until they start being paid when they retire? Respectfully, Judge Rivley, I disagree with that, and the reason for that is the language of 66D. If you look at all of the language, that cannot be the proper meaning of the term. I turned to Judge Rivley's question to be a friendly question to you. It was very friendly to you because . . . But she's given an argument. You're going to say you had a good argument, but that you backed up with something you could save the city of Fort Worth. I'm trying to be honest . . . Just a good lawyer . . . . . . to you . . . You're going to stay with the law. You know, I believe in the rule of law, Judge Rivley. The rule of law. And I believe that it will carry the day. We all believe in the rule of law when it rules for us. Well, and right now, I'm hoping to prove that I believe in the rule of law based on what we're saying this provision actually means. If you look at the language of the provision . . . What is the difference in your position and what Judge Rivley said? I don't see . . . What is the difference between . . . He says that it accrues whenever a person retires, and that's exactly what the effect of your argument is, well, that it doesn't accrue until the person retires, and it's not when it becomes vested, because their argument is essentially that vested means accrual. That's true. That is what they're arguing, but we're not saying respectfully, Judge Jolly, what you're saying, and again, it's because . . . What's the difference between what you're saying and what I just said? Let's take a look at the language of 66D. We know there that the predicate is that we cannot, as the city, change benefits that have been accrued by a person if that person first could have terminated employment or has terminated employment before the effective date of the change . . . I'll have this one, where Judge Rivley . . . . . . and would have been eligible for those benefits. What are those benefits? The accrued benefits. Without accumulating additional service under the retirement system on any date on or after the effective date of the change had the change not occurred, which means we're not waiting until retirement. We're looking at it as of the date of the change. What benefits have you accrued? We're going to calculate those benefits under the fact . . . That's exactly what he was saying. He says they have not accrued until . . . You're doing good. You're doing good, counsel. I think that we're saying something different, perhaps, to all three of us, and I'm trying to stick with the language of the Constitution that says we're going to give you the benefits that you have accrued as of the date of the change under the factors that were in place. You're going to get 100 percent of what you're entitled to under those factors up to the date of the change. Nothing is going to reduce or impair those benefits whatsoever. Going forward, into the future, we're going to apply different factors, because those are not benefits that you have yet accrued. We're not reducing or impairing. Do you think you've answered this interesting thing that we've . . . I certainly hope so. I suppose they will tell me whether I have answered their question. I didn't want to cut you off if you had something further on that, but I have a question back to the AG opinion. Yes, ma'am. Where it says the critical question is what does accrued mean, and then it says benefits accrued is limited, and they say the dispositive question is whether the term benefits accrued is limited to benefits attributable to services already performed, and then the conclusion is accrued benefits includes the method for determining the compensation. When it decides that it includes the method for determining the compensation, that is not favorable to you, although I think you said earlier that the AG opinion is very favorable to you. I don't think that's favorable to you, so can you help me with that? The reason that I'm not concerned by that terribly is that it's taken out of context. You have to read it in the rest of it. We would say that the term accrued benefits, as used in the Constitution, includes the method for determining the compensation base for calculating retirement benefits up to the point of the change, and we believe that the AG opinion stands for that very thing. Not only can you read the next sentence that talks about the constitutional provision prohibiting a change in the method of vested employees if such action reduces or impairs retirement benefits that the employee would have been eligible to receive on or before the effective date of the change. That's an important sentence, but most important is the footnote at the very end of this AG opinion that says, it is the city's particular chosen method for addressing the unfunded liability of the retirement system that we conclude may violate Texas Constitution, Article 16, Section 6060. The city could have addressed the unfunded liability through other means that would not violate the constitutional provision. Why is that so important? This AG opinion is in the context of vested employees, and in putting that footnote in place, the AG is telling the city of Fort Worth, even for vested employees, you can address your unfunded liability so long as you do not reduce or impair benefits accrued. The bifurcated calculation that the city has in place does just that. It makes sure that we do not impair benefits accrued, even while we . . . Okay, you have a red light. Yes. I apologize. You're on. Why doesn't it impair on the COLA? Why isn't it dispositive that they have evidence that reopening the election will impair the value of the choice they've already made? As a matter of law, the city has not taken any action with respect to the COLA that impairs or reduces their benefits. All the city did was present an option, and members either chose or did not choose that option. Any effect is not the result of unilateral legislative action on our part. It is an option that was created. So, whatever effect there is, is not attributable to the city's action, but to the election of the members of the fund. Okay, Ms. Auld, you've finished that argument, and you're going to be up here in a minute again, so you can tell us what you left out. Mr. Klausner, you have some time for rebuttal. Thank you, Judge Sholley. I want to get back to what the first thing we talked about was. What's a benefit accrued? Because I want to be crystal clear on that point. A benefit accrued is the whole complex of provisions within the retirement ordinance. It says you can pick a survivor and give some of your money to that person. If you get hurt, you get a disability. You can have various other feature choices. And when you reach vesting at five years, and by the way, the city could have said it at retirement age. Baltimore, Maryland does just that. If you're a police officer in Baltimore, you have to work right up until the date that you're old enough to retire, or you don't vest at all. You get nothing. Fort Worth shows five years, and said at that point, that whole complex of provisions vests. And I think something very important from the Attorney General's opinion, at Star 6, the Attorney General wrote, there is no persuasive support for the view that the constitutional amendment was intended to protect only benefits attributable to services performed prior to the change. That's the chief legal officer of Texas saying that this is meant for that discrete group of people who is vested on the date an ordinance changes. The great irony in all of this is, unlike any of the other constitutional provisions in the country, and I can say to the court, without hesitation, that at some point in every state or local government employee's career in this country, in the 7,500 plus defined benefit retirement plans that there are, at some point, every one of these things becomes a contract. It doesn't need to say it's a contract. Only nine states have specifically put an extra provision in the Constitution about pensions. Remember, Texas also has a provision in its Bill of Rights, its Declaration of Rights, that says the legislature and cities cannot impair the obligation of contract. And we never got to the U.S. trust versus New Jersey reasonable and necessary. I know the city made a point- Have you ever heard that the Bill of Rights steps in here as part of this case and it hasn't been analyzed by anybody? The Texas, we discussed impairment in the constitutional sense when we discussed Byrd and Trammell. And we said that under U.S. trust versus New Jersey, which is Article I, Section 10 of the U.S. Constitution. Right, but did you argue the Texas Bill of Rights? We cited it in our complaint, but remember, the court decided, Your Honor, that in response to the motion to dismiss, we're not going to talk about anything else in this case. We're only going to talk about Section 66. And that's why, even if I lose on that point, even if Officers Van Houten and Hall lose on that point, you should vacate the decision and send it back and say, They allege this Texas constitutional right against impairment of contract. You didn't get to it. They alleged an Article I, Section 10 of the United States Constitution impairment, and you never got to it. Yeah, but I don't think, I mean, my immediate impression is that we don't need to remand because once you decide that it's not accrued within the meaning of the Texas Constitution, that ends it. No, it does not, Your Honor. Why not? Here's why. Because in 1928, the Supreme Court of Texas says participation in a public pension plan in Texas is a contract. In 1937, in the Trammell decision, it says the legislature, not a city, the legislature has the reserved power to alter a state law. The Dallas Plan was created by the state legislature, Article 6243, one of that alphabet soup they got there in the Texas civil statutes. And the legislature changed the law, and that's because, they said, the Constitution says that the legislature, in a Republican form of government, has this reserved power. Cities are corporations. They are municipal corporations. They are not the legislature. And we argued in our brief a substantial distinction between a city's reserved power, which it does not have, and a legislature's. And even if the legislature had a reserved power, it can only impair a contract under Article 1, Section 10 of the U.S. Constitution for compelling reasons. You know, the city argues that this is all about the money. The record shows— If we— Oh, I'm sorry. If we say that it is not accrued, then there's no impairment of contract. You don't ever get to those issues. Sure there is, Judge. There absolutely is. No, but I— If we define what the definition of accrued is, that it doesn't affect any contract, which in effect it would not affect any contract in existence now— The contract is the pension ordinance. Well, I understand. I mean, if we accept your language, your interpretation of it, they are— The contract is accrued. It would only be accrued within the context of the—may I finish the question, Judge? Sure. Within the context of the constitutional provision, that's where the term benefit accrued means. If we had never had Article 16, Section 66, and the city did what it did, we would still be free to bring an Article 1, Section 10 of the U.S. Constitution impairment of contract argument because the Texas Supreme Court says it's a contract subject to some reserved power, and the question of whether the reserved power could be argued—remember, U.S. trust wasn't around in 1937—is subject to the reasonable and necessary clause. That dates back to the birth of our republic in the Federalist No. 44, and everything else. Okay, I think we can move on to the next case because you're not going to even have time to sit down, are you? Thank you. The next case.